In re ANDORRA MEAT MARKET,
INC., Debtor.

COLONIAL VILLAGE MEAT MARKET
LEASING, INC., Plaintiff,

v.

ANDORRA MEAT MARKET, INC. and
Roxboro Market Square, Defendants.

ROXBORO MARKET SQUARE,
Plaintiff,

v.

ANDORRA MEAT MARKET,
INC., Defendant.

Bankruptcy No. 80–01442K.
Adv. Nos. 80–0605K, 80–0595K.

United States Bankruptcy Court,
E. D. Pennsylvania.

Dec. 17, 1980.

Erwin L. Pincus, Philadelphia, Pa., for debtor.

Marvin Krasny, Philadelphia, Pa., for Colonial Village Meat Market.

Boris Shapiro, Philadelphia, Pa., for Roxboro Meat Square.

OPINION

WILLIAM A. KING, Jr., Bankruptcy Judge.

Presently before the court are two (2) adversary proceedings brought against the Debtor, Andorra Meat Market, Inc. ("Andorra") pursuant to § 362(d) of the Bankruptcy Code, 11 U.S.C. § 362(d) for relief from the automatic stay. By agreement of counsel, the two (2) cases will be decided on the basis of the record and pleadings filed

in the consolidated case of Colonial Village Meat Market Leasing, Inc., Adversary Number 80–0605K.[1] Because we believe that the prime lease in question was validly terminated prior to the filing of the Chapter 11 petition and that there is no executory interest to assume, and the requirements of § 362, 11 U.S.C. § 362 having been met, relief from the stay will be granted.

Upon consideration of the pleadings and related memoranda and after a hearing held on November 4, 1980, the court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. Plaintiff is Colonial Village Meat Market Leasing, Inc. ("Colonial"), a corporation organized under the laws of the Commonwealth of Pennsylvania, maintaining its principal place of business at 3600 Woodcrest Avenue, Newtown Square, Pennsylvania. (Paragraph 1 of Complaint; admitted by the Debtor.)

2. Defendant, Andorra Meat Market, Inc. ("Andorra"), is the Debtor–in–Possession. (Paragraph 2 of the Complaint; admitted by the Debtor.)

3. Defendant, Roxboro Market Square ("Roxboro"), is the owner of certain real estate known as the Andorra Shopping Center located in Philadelphia, Pennsylvania. (Paragraph 3 of the Complaint; admitted by the Debtor.)

4. Andorra filed its Chapter 11 proceeding on June 23, 1980. (Paragraph 4 of the Complaint; admitted by the Debtor.)

5. Colonial entered into a lease with Roxboro on or about November 10, 1977, for space in the Roxboro Market Square Shopping Center at 8919 Ridge Avenue, Philadelphia, Pennsylvania, in which Colonial was to operate a meat market. (Paragraph 5 of the Complaint; admitted by the Debtor.)

6. The lease between Colonial and Roxboro was admitted by all parties. (Plaintiff's Exhibit 1.)

7. Colonial entered into a sublease of the premises in question with Andorra on May 15, 1979. Said sublease was incorporated into and made part of the prime lease. (Paragraph 6 of the Complaint; admitted by the Debtor. Plaintiff's Exhibit 2.)

8. The leased premises were damaged by fire in May of 1980 and were considered by Colonial, pursuant to the terms of the lease, as totally destroyed. (Paragraph 7 of the Complaint; admitted by the Debtor.)

9. Colonial gave notice to Andorra on May 30, 1980 that it was terminating the prime lease since the premises were totally destroyed. Section 1501 of the prime lease permitted such a termination. (Plaintiff's Exhibits 3 and 4.)

10. Andorra has not paid rent since March 1980 and owes the sum of $13,100 in rent. (Testimony of D. Glassman.)

11. The premises are located in a strip shopping center and comprise 20% of the shopping center. (Testimony of D. Glassman.)

12. The premises are boarded up and the business is not being operated.

## DISCUSSION

Counsel for Defendant, Andorra, avers that the central issue in this matter is whether Andorra has any legal or equitable interest as defined in the Bankruptcy Code. Prior to consideration of that issue, we note that the filing of a petition under the Code operates as a stay of any act to obtain possession of property of the estate or of property from the estate. 11 U.S.C. § 362(a)(2), (3). "Property of the estate" consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The legislative history indicates and this Court has concluded that the scope of this section is extremely broad. *See In re Barsky*, 6 B.R. 624 (Bkrtcy.E.D. Pa.1980). It includes all kinds of property, including tangible or intangible property, causes of action, and all other forms of property currently specified in section 70(a)

1. Order dated November 4, 1980.

of the Bankruptcy Act, 11 U.S.C. § 70(a).[2] The Debtor's interest in property also includes "title" to property, which is an interest, just as is a possessory interest or as in the instant case, a leasehold interest. *See* Historical and Revision Notes, 11 U.S.C.A § 541.

A determination that the debtor has a legal or equitable interest in the subject premises is clouded by our prior findings of fact that the lease was terminated as between Roxboro and the Debtor's lessor, Colonial, and that the premises have been destroyed.

However, there is support for the proposition that even after the termination of a lease, the debtor's technical or "de facto" possession of the premises creates a "scintilla of equitable interest" in the premises thereby making the stay imposed by 11 U.S.C. § 362(a)(3) applicable. *In re Mimi's of Atlanta, Inc.*, 5 B.R. 623, 6 B.C.D. 807 (Bkrtcy.N.D.Ga.1980); *See also, In re GSVC Restaurant Corp.*, 3 B.R. 491, 6 B.C.D. 134 (Bkrtcy.S.D.N.Y.1980).

Assuming that the Debtor's interest is a sufficient nexus to invoke the protection of the automatic stay, such stay is subject to termination or modification by the court for grounds delineated in 11 U.S.C. 362(d) which reads as follows:

(d) On request of a party in interest and a hearing, the court shall grant relief from the stay provided under subsection (2) of this section, such as by terminating, annulling, modifying, or conditioning such stay–

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property, if–

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

2. The Bankruptcy Act of 1898 was repealed on October 1, 1979, P.L.No.95–598, 92 Stat. 2549 (1978).

■ Having found that the premises have been destroyed, that the prime lease between Roxboro and Colonial had been terminated prior to the filing of the Chapter 11 petition and that Andorra has not paid rent since March 1980 and owes $13,100 in rent, the automatic stay as to the subject property will be lifted. Although Andorra may indeed possess a "scintilla of equitable interest" in the property, such an interest is not to be equated with the concept of "equity" found in § 362(d)(2)(A). In addition, the present condition of the premises forces us to conclude that such property is not necessary to an effective reorganization.

■ Finally, we note that Colonial has raised the applicability of § 365 of the Code as an issue in this matter. Section 365, 11 U.S.C. § 365, governs the assumption or rejection of executory contracts or unexpired leases. Colonial contends that the only right Andorra has in the subject premises is a right under § 365 to assume the executory contract. However, once Andorra's executory contract was terminated, Colonial contends that the right to assume the leasehold interest in the property was lost.

We agree and find that Colonial's interpretation of § 365 is consistent with the decision in *In re Mimi's of Atlanta, Inc.*, *supra*. In discussing the assumption of executory contracts, that court stated:

Several courts, including the Fifth Circuit Court of Appeals, have recognized that lease agreements terminated prior to bankruptcy for reasons other than the operation of ipso facto clauses are not, as a general rule, assumable executory contracts. On the basis of his research of the legislative history behind the new Bankruptcy Code, one commentator has taken the position that this precedent which generally refuses to resurrect terminated agreements was adopted in the new Bankruptcy Code.

When lease agreements have terminated, they cease to be assumable under

§ 365 of the Code. Professor Countryman's analysis of executory contracts, which has been discussed and adopted by several courts, supports the conclusions that once future obligations no longer continue, i. e., once the agreement is terminated, there is no executory agreement. Similarly, Professor Williston has stated that: "all contracts are to a greater or less extent executory ... when they cease to be so, they cease to be contracts." 1 Williston on Contracts § 14 (3d Ed. 1957). Thus, if there is no agreement because of a termination, there is no executory interest which would make the agreement assumable. (footnotes omitted) *Id.*, 6 B.C.D. at 810.

Equitable considerations have been relied upon by some courts to convert terminated and therefore non–executory agreements into assumable contracts. It is this Court's position that equity should contradict clear legal principle in only rare instances. *Id.* Such an instance is not present here.

Accordingly, there is no § 365 executory interest available for Andorra to assume. Therefore, cause exists as well to lift the automatic stay. *Id.*; *In re GSVC Restaurant Corp., supra.*

### CONCLUSIONS OF LAW

1. The Complaint properly requests relief from the automatic stay provisions of the Bankruptcy Code, Section 362(a), and is filed in accordance with Section 362(d) of the Code.

2. The automatic stay imposed by Section 362(a)(3) of the Code prevents any party from obtaining possession of the premises which is "property of the estate", which is defined in Section 541(a) of the Code to include "all legal and equitable interests of the debtor in property as of the commencement of the case".

3. The automatic stay imposed by § 362(a)(3) will be lifted as to Plaintiffs, Colonial Village Meat Market Leasing, Inc. in Adversary No. 80–0605K and Roxboro Market Square in Adversary No. 80–0595K pursuant to § 362(d)(2).

4. The lease between Colonial and Roxboro was properly terminated in accordance with the terms of the lease, after the premises were destroyed by fire and prior to the filing of the Chapter 11 proceeding, therefore, the sublease between Colonial and the Debtor was terminated and there was no lease for Andorra to assume pursuant to Section 365 of the Code.